# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**VANESSA MARGARET QUINTANA,**

      **Plaintiff,**

    **vs.**                                                **Civ. No. 21-31 JFR**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

      **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 19)[2] filed June 7, 2021, in connection with Plaintiff Vanessa Quintana's *Motion to Reverse and Remand, With Supporting Memorandum* ("Motion"), filed November 19, 2021.  Doc. 28.  The Commissioner filed a response in opposition on February 18, 2022.  Doc. 32.  Plaintiff filed a reply on March 28, 2022.  Doc. 34.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law, and being fully advised in the premises, the Court finds that Plaintiff's Motion is not well taken.  Therefore, it is **DENIED**.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment in this case.  Docs. 3, 11, 12.

[2] Hereinafter, the Court's citations to the Administrative Record (Doc. 19), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

## I. BACKGROUND

Plaintiff received Supplemental Security Income ("SSI") beginning in 2008.  Tr. 67.  In

July 2017, an Age 18 Disability Redetermination found her not disabled, and her benefits ceased.

Tr. 67.  Plaintiff's claim of disability centered on Acid Reflux, Asthma, Back Pain, Depression,

Nightmares, Post Traumatic Stress Disorder ("PTSD"), and Social Anxiety.  Tr. 61.  Plaintiff

completed the ninth grade and attended classes toward the completion of the General

Educational Development Test ("GED") but did not successfully complete the exam.[3]  Tr. 37-38,

438, 580.  Plaintiff has worked as a home attendant, secretary, and waitress.  Tr. 51.  She stopped

working sometime in 2015 or 2016 because of paranoia and her desire to avoid interactions with

others.  Tr. 41.

In October 2018, Plaintiff applied for Social Security Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401, *et seq.* and for SSI

under Title XVI of the Act, § 1318, *et. seq.*  Tr. 67, 301, 308.  On March 19, 2019, Plaintiff's

applications were denied.  Tr. 187, 191.  At reconsideration on August 21, 2019, Plaintiff's

claims were again denied.  Tr. 203, 209.   Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ"), which was held telephonically[4] before ALJ Jeffrey N. Holappa on July 29,

2020.  Tr. 30, 220, 279-80.  Plaintiff was represented by attorney Gary Martone at the hearing.

Tr. 12, 32.  ALJ Holappa issued an unfavorable decision on August 25, 2020.  Tr. 12-22.

Plaintiff requested review by the Appeals Council.  Tr. 299.  On November 24, 2020, the

Appeals Council issued its decision denying Plaintiff's request for review and upholding the

---

[3] Plaintiff's Motion states that she "obtained her GED" after completing the ninth grade.  Doc. 28 at 1.  However, a review of the record, including the citation provided by Plaintiff in her Motion as support for this statement and Plaintiff's sworn testimony at the hearing before the ALJ reveals that, as of the dates relevant to these proceedings, Plaintiff had not successfully completed the GED but had attended classes toward its completion.  Tr. 37-38, 438, 580.

[4] The hearing was held telephonically due to the COVID-19 pandemic.  Tr. 12.

ALJ's final decision.  Tr. 1.  On January 12, 2021, Plaintiff timely filed a Complaint seeking

review of the Commissioner's final decision by this Court.  Doc. 1.

## II. APPLICABLE LAW

### A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Commissioner has

adopted the familiar five-step sequential analysis to determine whether a person satisfies the

statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in
> "substantial gainful activity."  If the claimant is engaged in substantial gainful
> activity, she is not disabled regardless of her medical condition.

> (2) At step two, the ALJ must determine the severity of the claimed physical or
> mental impairment(s).  If the claimant does not have impairment(s) or a
> combination of impairments that is severe and meets the duration requirement, she
> is not disabled.

> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets
> or equals in severity one of the listings described in Appendix 1 of the regulations
> and meets the duration requirement.  If so, a claimant is presumed disabled.

> (4) If, however, the claimant's impairments do not meet or equal in severity one of
> the listings described in Appendix 1 of the regulations, the ALJ must determine at
> step four whether the claimant can perform her "past relevant work." Answering
> this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th
> Cir. 1996).  First, the ALJ considers all of the relevant medical and other evidence
> and determines what is "the most [the claimant] can still do despite [her physical
> and mental] limitations."  20 CFR § 404.1545(a)(1).  This is called the claimant's
> residual functional capacity ("RFC").  *Id.* § 404.1545(a)(3).  Second, the ALJ
> determines the physical and mental demands of a claimant's past work.  Third, the
> ALJ determines whether, given the claimant's RFC, the claimant is capable of
> meeting those demands.  A claimant who is capable of returning to past relevant
> work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Hum. Serv.*, 933 F.3d 799, 801 (10th Cir. 1991).

**B.     Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (internal quotation marks and citation omitted). Likewise, "[e]vidence is not substantial if it . . . constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

4

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The reasons underlying the ALJ's decision must be "articulated with sufficient particularity to allow for judicial review." *Gorian v. Colvin*, 180 F. Supp. 3d 863, 868 (D.N.M. 2016). Further, the ALJ's decision must "apply the correct legal standard" and supply "a sufficient basis to determine that appropriate legal standards have been followed." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks and citation omitted). The Court does not "reweigh the evidence" or impose its judgment in place of the Commissioner's. *Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted).

### III. ANALYSIS

**A.      The ALJ's Findings**

The ALJ made his decision that Plaintiff was not disabled at step five of the sequential evaluation. Tr. 21-22. At step two, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2017, and that she had not engaged in substantial gainful activity from her alleged onset date, August 3, 2015. Tr. 14-15. The ALJ found that Plaintiff's severe impairments were asthma/allergies, fibromyalgia, migraine headaches, persistent depressive disorder, posttraumatic stress disorder, and social anxiety disorder. Tr. 15. He also found that Plaintiff had nonsevere impairments: gastroesophageal reflux disease, genital warts/anogenital molluscum, hyperhidrosis, and thyromegaly/globus sensation. Tr. 15.

At step three, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. Tr. 15-16. The ALJ determined that Plaintiff's impairments did not meet or equal in severity any of the listings described in the

governing regulations, 20 C.F.R. Part 404, Subpart 4, Appendix 1.  Tr. 15-17.  Therefore, he

proceeded to step four of the sequential evaluation and found that Plaintiff had

> the [RFC] to perform light work as defined in 20 C[.]F[.]R[.] 404.1567(b) and
> 416.967(b) except that she is limited to only occasional climbing of stairs and no
> climbing of ladders or scaffolds; occasional balancing, stooping, kneeling,
> crouching, and crawling; frequent reaching, handling, fingering, and feeling,
> bilaterally; no concentrated exposure to dust, odors, fumes, and pulmonary irritants;
> and no exposure to unprotected heights or moving mechanical parts.  [Plaintiff] is
> limited to understanding, remembering, and carrying out simple, routine tasks;
> making simple work-related decisions; dealing with changes in a routine work
> setting; maintaining concentration, persistence, and pace for at least two-hour
> intervals; and occasionally interacting with supervisors and co-workers, but having
> no interaction with the general public.

Tr .17.

However, the ALJ further found Plaintiff could not perform any of her past relevant

work, and thus proceeded to step five of the sequential evaluation.  Tr. 20-21. At step five, the

ALJ found that, in light of Plaintiff's "age, education, work experience, and [RFC], there are jobs

that exist in significant numbers in the nation economy that . . . [Plaintiff] can perform."   Tr. 21.

These jobs, according to the testimony of a vocational expert, are

- a marker, DOT Code 209.587-034,[5] with approximately 124,000 such jobs
  existing in the national economy; . . .
- a small products assembler I, DOT Code 706.684-022,[6] with approximately
  198,000 such jobs existing in the national economy; . . .
- a subassembler, DOT Code 729.684-054,[7] with approximately 16,000 such
  jobs existing in the national economy.

Tr. 21, 52-53.  Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 22.

As the basis of her Motion, Plaintiff argues broadly that the ALJ failed to adequately

consider the limitations caused by her migraine headaches and mental impairments, and thereby

---

[5] 1991 WL 671802 (Jan. 1, 2016) ("Marker").

[6] 1991 WL 679050 (Jan. 1, 2016) ("Assembler, Small Products I").

[7] 1991 WL 679729 (Jan. 1, 2016) ("Subassembler").

improperly assessed her RFC.  Doc. 28 at 5.  Specifically, Plaintiff contends that (1) the ALJ failed to properly explain how Plaintiff's severe impairments at step two[8] of the sequential evaluation, with her moderate limitations at step three, are not significant at step four to support his finding that she was not disabled (Doc. 28 at 6); (2) the ALJ did not apply the correct legal standards when weighing certain medical opinion evidence in Plaintiff's psychological evaluation (Doc. 28 at 8); and (3) the ALJ's reasons for discounting the opinion evidence in the psychological evaluation are not supported by substantial evidence (Doc. 28 at 8).

For the reasons discussed below, the Court finds no fault with the ALJ's explanation of his assessment of the evidence supporting his finding of Plaintiff's RFC.  The Court further finds that the reasons the ALJ provided for discounting the opinion in Plaintiff's psychological evaluation about limitations in her ability to interact with coworkers are supported by substantial evidence.  Therefore, the Court affirms the determination of the Commissioner.  The Court first sets out the legal standards applicable to Plaintiff's arguments, then proceeds to discuss Plaintiff's arguments in turn as they appear in her Motion.

**B.    Legal Standards**

*1.    RFC Assessment*

A claimant's "RFC is an administrative finding of what an individual can do despite his or her limitations." *Spicer v. Barnhart*, 64 F. App'x 173, 175 (10th Cir. 2003).  The "ALJ's RFC must be based on the entire case record, including the objective medical findings and credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir.

---

[8] While Plaintiff references migraine headaches in her Motion as the severe impairment identified by the ALJ at step two that she argues he failed to adequately consider when determining her RFC at step four, she does not develop an argument in this regard, centering her contentions solely upon the mental impairment of moderate limitations in concentrating, persisting, or maintaining pace identified by the ALJ at step three. *See* Doc. 28 at 5-8.  The Court's analysis is thereby limited to considering alleged error in the ALJ's decision with respect to only the impairments Plaintiff uses to advance her argument.  *See Hawkins v. Colvin*, No. 13-CV-980, 2015 WL 1481150, at *13 (D. Utah Mar. 31, 2015) ("The Court need not address undeveloped arguments.").

2009).  In assessing a claimant's RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis omitted); *see also* C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  This assessment must be "based on all of the relevant and other evidence" in the record. C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  "If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted." *Sullivan v. Colvin*, 519 F. App'x 985, 988 (10th Cir. 2013) (alterations omitted) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  Further, "the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." *Wells v. Colvin*, 727 F.3d at 1065 (omission and internal quotation marks omitted) (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the Court will conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *Spicer*, 64 F. App'x at 177-78.

　　　2.　*Medical Opinion Evidence*

　　　The ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medial evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he/she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R.

§§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  "The most important factors . . . are supportability . . . and consistency."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  The ALJ need not discuss each factor articulated in the regulations; rather, the ALJ must merely explain his weighing decision with sufficient specificity so as to be capable of review.  *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  Put differently, if the ALJ rejects an opinion, he "must then give 'specific, legitimate, reasons for doing so.'"  *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

**C.     The ALJ Adequately Explained His Assessment of the Evidence Supporting His Finding of Plaintiff's RFC**

Plaintiff first argues that the ALJ failed to adequately explain "how the severe impairments at step two, with moderate limitations at step three, are insignificant at step four to support the finding of not disabled."  Doc. 28 at 6.  Specifically, Plaintiff takes issue with the ALJ's assessment of her RFC, arguing that he did not take into account his findings at step three that she had moderate limitations in concentrating, persisting, or maintaining pace.  Doc. 28 at 6-7 (citing Tr. 15-16).  The Commissioner does not contest the fact that Plaintiff has impairments but argues that the ALJ's RFC determination appropriately accounted for Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace for two reasons. First, the Commissioner counters Plaintiff's argument that the ALJ's assessment at step four offers an inadequate explanation of how Plaintiff's limitations support the finding of her RFC by noting that, at step four, the ALJ relied on evidence in the record from many providers who evaluated

Plaintiff's mental health.  Doc. 32 at 7-9.  Next, the Commissioner maintains that the relevant legal standards for moderate limitations support the ALJ's RFC finding.  Doc. 32 at 11-13.  The Court is unpersuaded by Plaintiff's argument.

In his narrative discussion at step four, with respect to the findings at issue, the ALJ cited to Plaintiff's mental status examination conducted by Dr. Mary Loescher, Psychologist.  Tr. 18 (citing Tr. 437-40).  The ALJ discussed how, during Dr. Loescher's examination, Plaintiff "appeared depressed, had some difficulty doing serial 7's correctly, and scored within the low average range on the word reading subtest of the Wide Range Achievement Test 4."  Tr. 18 (citing Tr. 439).  He further noted that during the examination she "was clean and appropriately dressed," exhibited "clear normal speech" with "no evidence of apraxia, dysarthria, or problems with word retrieval," possessed "the ability to understand and participate in the consultation discussion," had a "logical, sequential flow of thought" with "appropriate thought content," was able "to remember five digits in the order given and five in reverse order, to complete serial 3's beginning at 50 with no errors, to spell WORLD forward and backward, to see common characteristics in to different but similar words," and showed "a good fund of knowledge."  Tr. 18 (citing Tr. 439-40).

Similarly, the ALJ cited records from other healthcare providers who have treated or evaluated Plaintiff's mental health.  Tr. 18-19.  For example, the ALJ mentioned two occasions on which Plaintiff was seen by Sabrina Johnson, PA-C, who noted that while Plaintiff had a "flat affect and sad mood," she "was alert and oriented with intact cognitive function; clear speech; and good insight and judgment."  Tr. 18 (citing Tr. 433, 494-95).  The ALJ also noted that the same provider, at a later date, examined Plaintiff and found her to be "alert and oriented with full range of mood and affect, and a logical, goal-directed thought process."  Tr. 19 (citing Tr. 508).

The ALJ further discussed the relevant portions of Plaintiff's psychological evaluation, outlined fully below,[9] by Kris Lichtle, Psychologist Associate, and Dr. David LaCourt, Psychologist.  Tr. 19 (citing Tr. 580-81).  Specifically, the ALJ discussed the "dysphoric mood, appropriate affect, and tearfulness when discussing her abuse" that Plaintiff exhibited during her evaluation.  Tr. 19 (citing Tr. 581).  He noted that the evaluation also showed Plaintiff with full orientation and cooperation, "a responsive facial expression . . . normal attention and concentration; grossly intact recall and memory, with no gaps or fillers to her retrieval; no noted, reported, or untoward preoccupations; no evidence of active hallucinatory or delusional processes; an average fund of general information; and average intellectual functioning."  Tr. 19 (citing TR 581).

Relying on this evidence, along with that of Plaintiff's physical impairments, the ALJ found that the "medical evidence fail[ed] to support [her] allegation of disabling symptoms and limitations" and that her RFC was "supported by the record overall when viewed in its entirety."  Tr. 19-20.  The Tenth Circuit has held that "[t]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).  In *Vigil*, at the RFC assessment, "the ALJ found some evidence indicating that Vigil had some problems with concentration, persistence and pace such that he could not be expected to perform complex tasks."  *Id.* (alteration, internal quotation marks, and citation omitted).  "But, the ALJ further found that the findings of a normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of a normal thought process, indicated that Vigil retained enough memory and concentration to perform at least simple tasks."  *Id.* (alteration, internal quotation marks, and citation omitted).  The Tenth Circuit

---

[9] *Infra* Section III.D at 13-14.

held that this assessment was adequate, such that the ALJ considered the claimant's moderate limitations in concentration, persistence and maintaining pace in finding that his RFC constrained him to unskilled work. *Id.* at 1204; *accord Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (noting that in the Tenth Circuit, ALJs "can account for moderate limitations by limiting the claimant to particular kinds of work activity"); *see also Lee v. Colvin*, 631 F. App'x 538, 541-42 (10th Cir. 2015).  The Court finds this analysis instructive.

Here, as illustrated more fully above, the ALJ engaged in a detailed narrative of the evidence in the record concerning Plaintiff's mental limitations.  Tr. 18-20.  Relying on this evidence, the ALJ arrived at his RFC determination, which limited Plaintiff to unskilled, light[10] work.  Tr. 21.  *Vigil* notes that there may exist cases "in which an ALJ's limitation to unskilled work does not adequately address a claimant's mental limitations."  805 F.3d at 1204.  But this is not such a case.  Indeed, the ALJ in *Vigil* relied on evidence that the claimant had "impaired delayed recall, inability to spell in reverse, or recall the President's name."  *Id.* at 1203.  These impairments are worse than Plaintiff's limitations identified by Dr. Loescher, Ms. Lichtle, and Dr. LaCourt as relied upon by the ALJ.  For these reasons, the Court is satisfied that the ALJ adequately explained his assessment of the evidence giving rise to his RFC finding such that no reversible error occurred.

D.     **The ALJ Applied the Correct Legal Standards in Weighing the Opinion in Plaintiff's Psychological Evaluation Concerning the Limitations in Her Ability to Interact with Coworkers and His Reasons for Assigning Such Weight are Supported by Substantial Evidence**

Plaintiff next argues that the ALJ did not apply the requisite legal standards to his assessment of certain medical opinion evidence.  Doc. 28 at 8.  Specifically, Plaintiff contends

---

[10] The ALJ's finding that Plaintiff is constrained to light work appears to be based upon his assessment of Plaintiff's limitations from her physical impairments, which are not at issue here.  Tr. 17-21; *see supra* note 7.

that the ALJ insufficiently articulated his reasons for discounting the opinion contained in

Plaintiff's psychological evaluation about limitations in her ability to interact with coworkers.

Doc. 28 at 9.  Plaintiff further contends that the reasons the ALJ did provide for discounting the

opinion at issue are not supported by substantial evidence.  Doc. 28 at 10-13.  The Commissioner

disagrees with Plaintiff's position in every particular, maintaining that the ALJ met the legal

standard for assessing the medical opinion evidence at issue, and arguing that Plaintiff's position

is akin to inviting the Court to reweigh the evidence.  Doc. 32 at 15-17.  The Court remains

unpersuaded by Plaintiff's argument.  The portions of the record that the parties cite as support

for their respective positions are discussed below.

   As mentioned above,[11] on January 2, 2019, Kris Lichtle, Psychologist Associate, and Dr.

David LaCourt, Psychologist, conducted a psychological evaluation of Plaintiff.  Tr. 580.

Plaintiff arrived as scheduled for the evaluation, presented appropriately, and reported driving

herself there. Tr. 581.  This evaluation included taking various histories, i.e., childhood,

education, employment, family, medical, mental health, substance abuse, and trauma.  Tr. 580-

82.  The evaluation's findings indicate that Plaintiff exhibited normal range attention and general

concentration.  Tr. 581.  The evaluation's findings further note that Plaintiff's orientation to time,

place, person, and general situation was normal.  Tr. 581.  Plaintiff displayed no obvious issues

with memory.  Tr. 581.  In addition, the evaluation notes normal eye contact, responsive facial

expression, and cooperative and appropriate affect.  Tr. 581.  Plaintiff exhibited dysphoric mood

and a tearful response to discussing her history of sexual abuse.  Tr. 580-81.  Plaintiff did not

exhibit untoward movement or preoccupations, or evidence of active hallucinatory or delusional

process, and reported sleeping four to five hours nightly depending on the occurrence of

---

[11] *Supra* Section III.3 at 11.

nightmares.  Tr. 581.  Finally, Plaintiff evinced an average bank of knowledge of weather and

current events, indicating average intellectual functioning, and adequate reality-testing for

typically-encountered situations based upon her reported everyday activities and responses

during the evaluation.  Tr. 581. In light of the foregoing, the evaluation included the following

summary:

- Understanding and remembering detailed/complex instructions:  no limitation; very short information instructions: no limitation[;]
- Sustained concentration/task persistence, for carrying out instructions: no limitation; attending and concentrating: no limitation; working without supervision: no limitation[;]
- Social interaction, with the public: moderate to marked limitation; with coworkers: moderate to marked limitation; with supervisor: moderate to marked limitation[;]
- Adaptation to changes in the workplace: moderate to marked limitation; aware of normal hazards/reacting appropriately: no limitation;
- Use of public transportation/travel to unfamiliar places: moderate to marked limitation;
  . . . .
- Able to manage benefits to her own best advantage – yes.

Tr. 582.

The ALJ found the opinions in this evaluation "somewhat persuasive."  Tr. 20.  He

discussed how the opinions were "supported" and "generally consistent" with the other evidence

in the record.  Tr. 20.  However, with regard to the opinion that Plaintiff's had "moderate to

marked limitations in her ability to interact with coworkers," the ALJ noted that this is

inconsistent with Plaintiff's own "reports that she has no problems getting along with . . . others,

and has never been fired or laid off from a job because of problems getting along with other

people."  Tr. 20.

Plaintiff argues that while the ALJ gave reasons for discounting the opinion in the

evaluation, she has moderate to marked limitations with respect to being able to interact with

coworkers, the reasons given are illegitimate and unsupported by the other evidence in the

14

record.  Doc. 28 at 9.  In support of this argument, Plaintiff first contends that the ALJ failed to provide sufficient support for his findings.  Doc 28 at 9.  More specifically, Plaintiff points to her disclosures of abuse to Ms. Litchle and Dr. LaCourte and her statement to them that she attends therapy "every other week because it is too overwhelming for her to leave the house every week."  Doc. 28 at 10 (quoting Tr. 580).  Plaintiff further directs the Court to her Function Reports, dated November 14, 2018, and July 16, 2019, wherein she states that she does not like being around other people, particularly crowds of people.  Doc 28 at 11-12 (citing Tr. 341-48, 375-82).  Finally, Plaintiff highlights the fact that she largely stays at home.  Doc. 28 at 11-12.

The Commissioner counters that the ALJ's assessment of the medical evidence at issue was reasonable and otherwise based on substantial evidence.  Doc. 32 at 16.  The Commissioner notes that Plaintiff uses only her statements and testimony to support her position that the ALJ's discounting of the opinion of Ms. Litchle and Dr. LaCourte with respect to her limitations in ability to interact with coworkers is not supported by substantial evidence, while other evidence in the record, including statements by Plaintiff, are inconsistent with the evidence she emphasizes.  Doc. 32 at 15-16.  Thus, the Commissioner argues, Plaintiff invites the Court to reweigh the evidence, contrary to what is demanded by the applicable standard of review.  Doc. 32 at 15-16.

As relevant to the issue of Plaintiff's ability to interact with coworkers, the Court perceives no reversible error with respect to the ALJ's assessment of Plaintiff's psychological evaluation by Ms. Litchle and Dr. LaCourte.  The ALJ offered a comprehensive discussion of the evaluation, including the impressions, opinions, and summary therein.  Tr. 15-16, 19-20.  His discussion included a survey of the other evidence in the record, and the degree of consistency or inconsistency between that evidence and the psychological evaluation.  Tr. 15-16, 18-20.  For

example, the ALJ determined that the finding in Plaintiff's psychological evaluation that her ability to interact with coworkers is moderately to markedly limited was inconsistent with Plaintiff's own statement that she does not have any problems getting along with other people and evidence that she had never lost a job because of issues getting along with other people. Tr. 20.[12] The ALJ's assessment of the relevant portion of Plaintiff's psychological evaluation, therefore, comports with the legal standard for evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(4), 416.920c(c)(1)-(4).

To the extent Plaintiff's argument asks the Court to reweigh the evidence in the record as it relates to this issue, the Court declines to do so. Plaintiff's arguments, outlined fully above, are a clear quarrel with the weight the ALJ assigned to the medical evidence at issue. But, having determined that the ALJ applied the appropriate legal standard here, the Court is without a basis for reversal. Indeed, the primary way Plaintiff supports her argument here is by directing the Court to evidence that lends credence to her position. Doc. 28 at 11-13. Specifically, Plaintiff contends that there was "overwhelming evidence that [she] isolates in her home." Doc. 28 at 12. The Court cannot assign weight to the evidence Plaintiff directs us to or supplant the judgment of the ALJ. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). And, this evidence is not overwhelming, as it consists entirely of Plaintiff's own statements. Doc. 12 at 10-12.

Finally, Plaintiff's reliance on *Miranda v. Barnhart*, 205 F. App'x. 638 (10th Cir. 2005) for the proposition that "[a] restriction on leaving one's residence might be a potentially significant restriction on activities of daily living" is unavailing. *Id.* at 642. In that case, the

---

[12] The ALJ cites Plaintiff's own Function Reports as evidence that Plaintiff has never lost a job because of issues getting along with other people. Tr. 16, 20 (citing Tr. 341-48, 375-82). For clarity, the Court notes that this evidence actually appears to come from a Third-Party Function Report submitted by Plaintiff's cousin. *Compare* Tr. 341-48, 375-82 (Plaintiff's Function Reports), *with* Tr. 349-56 (Third-Party Function Report).

Tenth Circuit held that the ALJ's finding that the claimant "was not a credible witness" was unsupported by the reasons provided by the ALJ for making such a credibility determination.  *Id.* As is relevant here, the ALJ in *Miranda* discounted the claimant's credibility because he "did not experience significant limitations on his activities of daily living" because he "stays in his room, showers, does some housecleaning (though he never completes it), draws, listens to music, reads, and washes dishes."  *Id.*  The Tenth Circuit noted, however, that "the ALJ did not address in any specificity the testimony of [claimant] and his mother describing [claimant]'s curtailment of *virtually all* activity outside of his apartment."  *Id.* (emphasis added).  It continued by observing that the ALJ paid only superficial acknowledgement to the testimony about the claimant's disinclination to leave his apartment, while focusing nearly exclusively on the activities that the claimant could accomplish inside his apartment.  *Id.*

The inverse is true in this case.  Contrary to the ALJ in *Miranda*, here, the ALJ not only discussed Plaintiff's "conten[tion] that her daily activities have been significantly limited due to her alleged disabling conditions," but also discussed with specificity the activities that Plaintiff could accomplish both inside and outside of her home, noting that on two separate occasions Plaintiff "reported she is able to take care of her personal needs; care for her young daughter; prepare meals; perform household chores; drive; go out alone; regularly attend medical appointments and take her medication without needing reminders."  Tr. 19 (citing 341-48, 375-82).

In light of the foregoing, the Court is unconvinced that the ALJ failed to employ the correct legal standards in weighing the opinion evidence from Plaintiff's psychological evaluation.  The Court is otherwise satisfied that the ALJ's reasons for discounting certain opinion evidence from that evaluation is supported by substantial evidence.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion is **DENIED** and the decision of the ALJ

is **AFFIRMED**.

**IT IS SO ORDERED.**


**JOHN F. ROBBENHAAR**
United States Magistrate Judge,
Presiding by Consent